UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK TIMES COMPANY and SHEILA KAPLAN,<br><br>Plaintiffs,<br><br>-v-<br><br>U.S. FOOD AND DRUG ADMINISTRATION,<br><br>Defendant. | 19 Civ. 4740 (VEC) |

**MEMORANDUM OF LAW IN SUPPORT OF
THE U.S. FOOD AND DRUG ADMINISTRATION'S
MOTION FOR SUMMARY JUDGMENT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2725
Email: charles.jacob@usdoj.gov

CHARLES S. JACOB
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ..........................................................................................................................2

      A.    FDA's Section 904(b) Request to JUUL .........................................................2

      B.    FDA's September 2018 Inspection of JUUL's Headquarters.................................3

      C.    Plaintiffs' FOIA Requests.................................................................................4

      D.    Procedural History and Production History.................................................4

      E.    The Records That Remain At Issue in This Litigation ...........................................6

LEGAL STANDARDS ON SUMMARY JUDGMENT IN FOIA CASES .................................8

ARGUMENT.................................................................................................................................9

I.      FDA PROPERLY WITHHELD THE CHALLENGED RECORDS UNDER EXEMPTION 4 ....................................................................................................................9

      A.    The Withheld Records Are Commercial In Character .........................................10

      B.    The Withheld Records Are Confidential...............................................................11

            i.    Confidential Means "Private" Or "Secret"..............................................11

            ii.    The Records At Issue Were Closely Held By Juul .................................12

            iii.    To the Extent Any Assurance Of Privacy by the Government Is Required Under Exemption 4, JUUL Reasonably Relied On Such Assurances From FDA ................................................................................14

            iv.    The FOIA Improvement Act of 2016 Does Not Alter The Scope Of Information That Is Covered Under Exemption 4 ..............................15

CONCLUSION............................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Dep't of Justice*,
681 F.3d 61 (2d Cir. 2012)............................................................................................. 9

*Am. Airlines, Inc. v. Nat'l Mediation Bd.*,
588 F.2d 863 (2d Cir. 1978)......................................................................................... 10

*Am. Small Bus. League v. United States Dep't of Def.*,
411 F. Supp. 3d 824 (N.D. Cal. 2019) ............................................................. 13, 15, 16

*Am Civil Liberties Union v. United States Dep't of Def.*,
901 F.3d 125 (2d Cir. 2018)........................................................................................... 9

*Baker & Hostetler LLP v. U.S. Dep't of Commerce*,
473 F.3d 312 (D.C. Cir. 2006) ..................................................................................... 10

*Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys.*,
649 F. Supp. 2d 262 (S.D.N.Y. 2009)............................................................................ 8

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*,
601 F.3d 143 (2d Cir. 2010)........................................................................................... 9

*Carney v. DOJ*,
19 F.3d 807 (2d Cir. 1993)............................................................................................. 8

*Center for Investigative Reporting v. U.S. Customs and Border Protection*,
No. 18 Civ. 2901 (BAH), 2019 WL 7372663 (D.D.C. Dec. 31, 2019) .............................. 15, 17

*CIA v. Sims*,
471 U.S. 159 (1985)....................................................................................................... 8

*Cont'l Stock Transfer & Trust Co. v. SEC*,
566 F.2d 373 (2d Cir. 1977)......................................................................................... 11

*Ferguson v. FBI*,
89 Civ. 5071 (RPP)1995 WL 329307 (S.D.N.Y. June 1, 1995)................................... 2

*Food Marketing Institute v. Argus Leader Media*,
139 S. Ct. 2356 (2019)....................................................................................... 1, 11, 12, 13

*Inner City/Press Community on the Move v. Bd. of Governors of Federal Reserve System*,
463 F.3d 239 (2d Cir. 2006)........................................................................................... 9

*John Doe Agency v. John Doe Corp.*,
493 U.S. 146 (1989)....................................................................................................... 8

2

*N.Y. Pub. Interest Research Grp. v. U.S. E.P.A.*,
  249 F.Supp.2d 327 (S.D.N.Y. 2003) ............................................................................. 10

*N.Y. Times Co. v. DOJ*,
  872 F. Supp. 2d 309 (S.D.N.Y. 2012) .............................................................................. 2

*Nat'l Parks & Conservation Ass'n v. Morton,*
  498 F.2d 765 (D.C. Cir. 1974) ....................................................................................... 11

*NRDC v. U.S. Dep't of Interior*,
  36 F. Supp. 3d 384 (S.D.N.Y. 2014) ............................................................................ 3, 8

*Perrin v. United States*,
  444 U.S. 37 (1979) ......................................................................................................... 11

*Pub. Citizen v. HHS*,
  66 F. Supp. 3d 196 (D.D.C. 2014) ............................................................................. 3, 11

*Pub. Citizen v. United States Dep't of Health & Human Servs.*,
  975 F. Supp. 2d 81 (D.D.C. 2013) ................................................................................ 10

*United States Dep't of Justice v. Landano*,
  508 U.S. 165 (1993) ....................................................................................................... 14

*Utah v. U.S. Dep't of Interior*,
  256 F.3d 967 (10th Cir. 2001) ............................................................................. 3, 4, 5, 6

*Watch Network v. United States Immigration & Customs Enf't,*
  215 F. Supp. 3d 256 (S.D.N.Y. 2016) ........................................................................... 10

*Wilner v. NSA*,
  592 F.3d 60 (2d Cir. 2009) ........................................................................................... 8, 9

**Statutes**

5 U.S.C. § 551 ...................................................................................................................... 9

5 U.S.C. § 552 .............................................................................................................. *passim*

21 U.S.C. § 374 ................................................................................................................. 2, 3

21 U.S.C. § 387 ............................................................................................................... 2, 15

3

**Regulations**

21 C.F.R. § 20.61 ................................................................................................................ 4, 14-15

**Other Authorities**

Transcript of Oral Argument in *Food Marketing Institute v. Argus Leader Media*, 2019 WL 1766035 (Apr. 22, 2019) .............................................................................. 15

## PRELIMINARY STATEMENT

This Freedom of Information Act ("FOIA") case does not concern any government-created records. Instead, the only records at issue were obtained by the United States Food and Drug Administration ("FDA") from JUUL Labs, Inc. ("JUUL"), an e-cigarette maker pursuant to a document request and subsequent regulatory inspection authorized under the Federal Food, Drug, and Cosmetic Act ("FDCA"). To be sure, potential youth use of JUUL products is of public health concern. That is, for example, reflected by FDA's inquiries into JUUL. But in enacting FOIA, Congress protected "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential" from disclosure. The breadth of this exception—FOIA's Exemption 4—was recently reinforced by the Supreme Court in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019). In that case, the Supreme Court rejected any interpretation of the term "confidential" in this exemption that would require a showing of competitive harm to the submitter.

The evidence here establishes that the JUUL records at issue were confidential commercial information. For example, a JUUL employee has attested that all of the records were customarily and actually treated as highly confidential and private. That alone is enough to establish that they were confidential. But in addition, JUUL understood that FDA would maintain the confidentiality of these records. That belief was reasonably rooted in assurances by the government about Exemption 4 in applicable statutes and FDA regulations.

The JUUL records are also commercial in nature. As the declaration submitted by JUUL and FDA's 450-page *Vaughn* Index demonstrate, the records relate to JUUL's business and operations. The records include, for example, sales and marketing plans, clinical study records, consumer survey analyses, and regulatory compliance records. FOIA's Exemption 4 therefore protects all of these records from disclosure.

Contrary to Plaintiffs' suggestion, the 2016 amendments to the FOIA statute do not alter this conclusion. Those amendments imposed a "foreseeable harm" requirement, but only to the interests protected by FOIA. The interest here is confidentiality itself. Any other reading of the amendments would re-impose a "harm" test already rejected by the Supreme Court in *Argus Leader*.

Indeed, disclosure of many of these records would discourage the open flow of information by companies to their regulators, while shedding no light on government decision-making. That could not have been the result that Congress had in mind when enacting FOIA. Thus, FDA respectfully requests that the Court grant FDA's motion for summary judgment.

## BACKGROUND[1]

In 2018, FDA obtained records from JUUL in the exercise of its regulatory authority. The JUUL records acquired by FDA and at issue here were obtained through two methods. First, in April 2018, FDA requested certain records from JUUL under Section 904(b) of FDCA, 21 U.S.C. § 387e. Second, in September 2018, FDA obtained records from JUUL during a September 2018 inspection of JUUL's headquarters, conducted under Section 704 of the FDCA, 21 U.S.C. § 374. These regulatory inquiries are discussed in turn below.

### A.    FDA's Section 904(b) Request to JUUL

On April 24, 2018, FDA's Center for Tobacco Products requested that, pursuant to Section 904(b) of the FDCA, 21 U.S.C. § 387d, JUUL submit to FDA "documents relating to marketing practices and research on marketing, effects of product design, public health impact,

---

[1] FDA is not submitting a Local Rule 56.1 statement because "the general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment" and a Local Rule 56.1 statement "would be meaningless." *Ferguson v. FBI*, 89 Civ. 5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996); *N.Y. Times Co. v. DOJ*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012).

and adverse experiences and complaints related to JUUL products." Declaration of Sarah B. Kotler ("Kotler Decl.") ¶ 11; Ex. B at 1. That request was "based on growing concern about the popularity of [JUUL] products among youth." Kotler Decl., Ex. B at 1. The request also stated that "[c]onsistent with applicable statutes and regulations, the confidentiality of trade secret and confidential commercial information submitted to FDA pursuant to this request will be preserved." *Id.* at 5.

On June 15, 2018, JUUL produced records to FDA in response to the Section 904(b) request. Declaration of Joanna Engelke ("Engelke Decl.") ¶ 8.[2] When producing such documents, JUUL requested that "all information submitted in the course of FDA's investigation of [JUUL] be treated by FDA as confidential." *Id.* JUUL also "requested that FDA maintain these documents in a non-public file and deny access to these documents by any third-party who is not a member of the FDA or its staff." The produced documents "all bear a legend stating 'FOIA Confidential Treatment Requested.'" *Id.*

## B.      FDA's September 2018 Inspection of JUUL's Headquarters

In September 2018, FDA's Office of Regulatory Affairs inspected JUUL's headquarters under authority granted by Section 704 of the FDCA, 21 U.S.C. § 374. Declaration of Marqui Q. Barnes ("Barnes Decl.") ¶ 24. During that inspection, FDA obtained certain JUUL

---

[2] Joanna Engelke is JUUL's Chief Quality Officer and has provided a declaration in this case to explain, among other things, how JUUL maintains the confidentiality of the records produced to FDA.  Courts in this District and elsewhere have accepted and considered declarations from the third-party submitters of information at issue in Exemption 4 cases. *See, e.g.*, *NRDC v. U.S. Dep't of Interior*, 36 F. Supp. 3d 384, 402 n.10 (S.D.N.Y. 2014) (finding that such declarations are "relevant and based on personal knowledge," and thus that "[t]he Court is . . . at liberty to consider the declarations"); *Pub. Citizen v. HHS*, 66 F. Supp. 3d 196, 208 (D.D.C. 2014) (Defendant-Intervenor's "declarants make a strong case as to why the information contained in these documents could be used to cause substantial commercial harm."); *Utah v. U.S. Dep't of Interior*, 256 F.3d 967, 970 (10th Cir. 2001) (considering declarations from the two private entities whose information was sought to be disclosed).

records. *See id*. All of the records obtained by FDA during the inspection and at issue in this litigation bear large red CONFIDENTIAL stamps and/or bear confidentiality legends within the documents themselves, such as "JUUL Labs, Inc. – CONFIDENTIAL." Engelke Decl. ¶ 11.

**C.      Plaintiffs' FOIA Requests**

Two FOIA requests submitted by Plaintiffs are at issue. First, on June 25, 2018, Plaintiffs submitted a FOIA request to FDA seeking "all materials that are submitted in any form, to the FDA, from JUUL or its representatives, lawyers, lobbyists, and other parties, that are responsive to the attached letter," Kotler Decl. ¶ 11, Ex. A (the "Section 904(b) FOIA Request"). The "attached letter" referenced in the FOIA request is FDA's April 24, 2018, Section 904(b) request to JUUL. *See id.* ¶ 11, Ex. B.

On October 18, 2018, Plaintiffs submitted another FOIA request to FDA. *See id.* ¶ 14. That request sought "the marketing and advertising records, and sales strategy records, that the FDA obtained from [JUUL] during its visit to headquarters the last week of September [2018]." *See id.,* Ex. C (the "September 2018 Inspection FOIA Request").

**D.      Procedural History and Production History**

FDA originally determined that all records responsive to the September 2018 Inspection FOIA Request were exempt from disclosure under FOIA Exemption 7(A) because FDA's inspection of JUUL remained open. *See* Kotler Decl. ¶ 17, Ex. D. Although FDA's position remains that this denial was appropriate, FDA reprocessed the September 2018 Inspection FOIA Request after this litigation commenced because, by that point, FDA had closed its inspection. *See* Barnes Decl. ¶ 16.

In processing both FOIA requests, FDA provided a predisclosure notification to JUUL pursuant to 21 C.F.R. § 20.61. *See* Barnes Decl. ¶¶ 19, 25. Such a predisclosure notification requests, among other things, a response from the submitter as to whether the information sought

4

in the FOIA request was confidential. *See id.*, Ex. A, B. JUUL responded to FDA's predisclosure

notifications. Barnes Decl. ¶¶ 21; 25. In its responses, JUUL designated certain records as

exempt from disclosure under FOIA Exemption 4. *Id.* FDA then conducted its own page-by-

page, line-by-line review of the records. *Id.* ¶¶ 22, 26. After reviewing the records and JUUL

responses to the predisclosure notices, FDA agreed with all of JUUL's Exemption 4

designations. *Id.*

Pursuant to an agreed-upon and Court-ordered schedule, FDA responded to Plaintiffs'

FOIA requests in six tranches. The table below reflects the volumes produced and withheld by

FDA, as different metrics were used across the FDA responses:

| FOIA Request | Response Date | Produced | Withheld |
| --- | --- | --- | --- |
| Section 904(b) FOIA Request | July 31, 2019 | 1,656 pages of records in full | 8,684 pages of records in full |
| | September 3, 2019 | 148 pages in full, 75 pages in part | 11,711 pages of records in full; part of 75 pages |
| | October 1, 2019 | 4 records in full | 349 records in full |
| | October 16, 2019 | 5 mp3 files in full | 4 mp3 files in full |
| | October 31, 2019 | 3 mp4 files in full | 48 mp4 files in full |
| September 2018 Inspection FOIA Request | September 5, 2019 | Part of seven pages of one "exhibit" | 48 exhibits in full; part of one exhibit |

*See* Barnes Decl. ¶¶ 23, 27.

After FDA fully responded to Plaintiffs' FOIA requests, the parties met and conferred in

order to attempt to narrow the issues for summary judgment. Plaintiffs informed Defendants that

they do not challenge the adequacy of FDA's searches and only challenge FDA's withholdings

for the categories of documents described in the following section and the Engelke declaration.

*See* Dkt. No. 16, Joint Status Report.  In total, 4,420 records remain in dispute. *See Vaughn*

Index, Ex. C, Barnes Decl. All of the remaining records in dispute were withheld under the "confidential commercial information" clause of Exemption 4. *See id.*

**E.    The Records That Remain At Issue in This Litigation**

JUUL Chief Quality Officer Joanna Engelke has sworn that the records sought by Plaintiffs in this action fall into five different categories. As described by Engelke, those categories are:

- **"Market Strategy Documents**: These documents reflect the commercial marketing strategy for the Company's products. The documents reflect internal analysis that was used to identify market segmentation, potential commercial opportunities, product development and pricing, marketing strategy to adult smokers, and differentiation among competitor categories and products, among other key attributes to develop and launch JUUL products for commercialization."

- **"Product Testing Documents**: The Product Testing Documents encompass current product testing and chemical analyses for JUUL products. These documents include information related to preclinical testing and preliminary clinical trials of JUUL products."

- **"Consumer Experience Documents**: The Consumer Experience Documents reflect communications from consumers and JLI's responses to those communications. These documents reflect the Company's ongoing commercial strategy for JUUL products, as well as the Company's internal strategy and response to consumer complaints."

- **"Youth Prevention Documents**: These documents reflect the Company's internal communications and approach to public outreach about responding to youth use of [electronic nicotine delivery system] products, preventing youth use of its product, and related public concern. All of these documents reflect the Company's internal deliberations and strategic approach to public outreach."

- **"Regulatory Compliance Documents**: These documents reflect the Company's internal training materials and standard operating procedures for regulatory compliance, including quality control, clinical research, and hazard evaluation."

Engelke Decl. ¶¶ 16-20.

The *Vaughn* Index attached to the Barnes declaration provides additional details regarding each specific withheld record that remains at issue.[3] As reflected in that index, the records withheld by FDA in response to the Section 904(b) FOIA Request include, for example: (a) records relating to marketing proposals, product quality, pricing, sales, and ecommerce: (b) records related to clinical studies or product testing; (c) toxicological safety reports and analyses of JUUL products; (d) business overviews; (e) records including sales data or relating to JUUL's revenue growth; (f) records relating to consumer surveys and draft letters to consumers; (vii) distribution agreements; (g) records regarding youth prevention, including relating to training and a compliance monitoring program; (h) correspondence with web technology companies and retailers; (i) records reflecting consumer complaints: (j) certain company policies, including regarding social media and sales and marketing practices; (k) videos of focus groups, interviews, and sensory groups; and (k) an anti-vaping video for minors. *See Vaughn* Index at 1-446.

Similarly, records responsive to the September 2018 Inspection FOIA Request include records relating to JUUL's website, reseller program, retailers, distributors, vendors, marketing,

---

[3] FDA relied on JUUL's categorizations of the 904(b) records for the "record category" column of the *Vaughn* Index. Using those same categories, FDA used good faith efforts to categorize the inspectional records. FDA prepared the "description of record" column for all of the records in the *Vaughn* Index. As FDA was not involved in the creation of these records, these descriptions reflect FDA's good-faith attempt to describe the nature of the record after reviewing it on its face, so that Plaintiffs can adequately challenge the withholdings, while also maintaining the confidentiality of the protected information.

7

product labeling, standard operating procedures, clinical studies, service agreements, customer communications, and statements of work with third-parties. *See id.* at 447-49.

## LEGAL STANDARDS ON SUMMARY JUDGMENT IN FOIA CASES

FOIA generally requires federal agencies to make documents and other material "available to the public," *see* 5 U.S.C. § 552(a), but specifically exempts nine different categories of information from that requirement, see *id.* § 552(b). Congress adopted this structure "to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. No. 89-149 at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423). The nine exemptions to FOIA's disclosure requirements reflect Congress's determination that "public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 167 (1985). Accordingly, FDA may properly withhold information that falls within any of the nine exemptions. *Id.*

"Summary judgment is the preferred procedural vehicle for resolving FOIA disputes." *Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009). Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An agency can satisfy its burden on a motion for summary judgment by submitting a declaration that (1) supplies "facts indicating that the agency has conducted a thorough search" and (2) gives "reasonably detailed explanations why any withheld documents fall within an exemption." *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1993). The agency's declaration is "accorded a presumption of good faith," and discovery is "unnecessary if the agency's submissions are adequate on their face." *Id.* (internal quotation marks omitted); *accord Wilner v.*

*NSA*, 592 F.3d 60, 69 (2d Cir. 2009). An agency's justification for asserting an exemption "is sufficient if it appears logical and plausible." *Am Civil Liberties Union v. United States Dep't of Def.*, 901 F.3d 125, 133 (2d Cir. 2018), *as amended* (Aug. 22, 2018); *see ACLU v. Dep't of Justice*, 681 F.3d 61, 69 (2d Cir. 2012); *Wilner v*, 592 F.3d at 73 ("Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible.").

Here, Plaintiffs do not challenge the adequacy of FDA's searches.[4] Thus, all that remains at issue is whether FDA properly invoked the confidential commercial information clause of Exemption 4 in withholding the records that remain at issue.

## ARGUMENT

### I.   FDA PROPERLY WITHHELD THE CHALLENGED RECORDS UNDER EXEMPTION 4

FOIA's Exemption 4 excludes from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). "Exemption Four applies if a tripartite test is satisfied: (1) The information for which exemption is sought must be a trade secret or commercial or financial in character; (2) it must be obtained from a person; and (3) it must be privileged or confidential." *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010). The second prong of this test is satisfied because the records were indisputably obtained from JUUL and JUUL is a person, as defined by FOIA. *See* 5 U.S.C. § 551(2) (defining a "person" as an "an individual, partnership, corporation, association, or public or private organization other than an agency"); *see also Inner City/Press Community on the Move v. Bd. of Governors of Federal Reserve System*, 463 F.3d 239, 244 (2d Cir. 2006). The other two prongs of the test are also met.

---

[4] The thoroughness of FDA's searches, however, is also demonstrated by the Kotler and Barnes declarations. *See* Kotler Decl. ¶¶ 10-16; Barnes Decl. ¶¶ 17-18; 24-25.

9

### A.  The Withheld Records Are Commercial in Character

The records at issue relate to JUUL's business and operations and are thus "commercial." "Although the terms 'commercial' and 'financial' have not been precisely defined by the Second Circuit, *see Am. Airlines, Inc. v. Nat'l Mediation Bd.*, 588 F.2d 863, 870 (2d Cir. 1978) (defining 'commercial' as 'pertaining or relating to or dealing with commerce'), commercial includes at least information that has 'commercial value,' that would 'jeopardize [ ] commercial interests or reveal information about [ ] ongoing operations." *Det. Watch Network v. United States Immigration & Customs Enf't*, 215 F. Supp. 3d 256, 262 (S.D.N.Y. 2016) (quoting *N.Y. Pub. Interest Research Grp. v. U.S. E.P.A.*, 249 F.Supp.2d 327, 334 (S.D.N.Y. 2003)). Exemption 4 is not limited to records that "reveal basic commercial operations . . . or relate to the income-producing aspects of a business," but it also "reaches more broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006). Information is "commercial" where it would reflect "an extensive, probing review of [a company's] confidential business systems and policies," as well as "a company's internal structure and operations." *Pub. Citizen v. United States Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81, 116 (D.D.C. 2013).

This standard is satisfied for the records at issue. For examination, Engelke has testified that the Market Strategy Documents "encompass commercial strategies that reflect how JUUL products have been developed and positioned for adult consumers against the traditional combustible cigarette and e-cigarette categories." Engelke Decl. ¶ 16. She has also attested that the Product Testing Documents reflect JUUL's product testing and chemical analyses of JUUL products, and that "[t]heir public release would be of great interest to [JUUL's] competitors." *Id.* ¶ 17. Engelke has likewise affirmed that the Consumer Experience Documents reflect JUUL's

10

"ongoing commercial strategy for JUUL products, as well as the Company's internal strategy and response to consumer complaints." *Id.* ¶ 18; *see also Pub. Citizen v. United States Dep't of Health & Human Servs.*, 66 F. Supp. 3d 196, 208 (D.D.C. 2014) (holding that logs that described interactions with consumers were "commercial" information). Engelke has also sworn that all of the Youth Prevention Documents "reflect the Company's internal deliberations and strategic approach to public outreach." Engelke Decl. ¶ 19. Further, the Regulatory Compliance Documents are commercial because "the way the companies implement their compliance programs" is "sufficiently instrumental to a [company's] operations." *Pub. Citizen*, 66 F. Supp. 3d at 208. Accordingly, records at issue are "commercial" under Exemption 4.

### B.  The Withheld Records are Confidential

#### i.    Confidential Means "Private" or "Secret"

In *Argus Leader*, the Supreme Court articulated that "confidential," as it is used in Exemption 4, must be given its "ordinary, contemporary, common meaning" at the time the statute was enacted in 1966 and that "[t]he term 'confidential' meant then, as it does now, 'private' or 'secret.'" 139 S. Ct. at 2362-63 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). In doing so, the Court rejected the "competitive harm" standard, which had required a showing that disclosure of the information was "likely to cause substantial harm to the competitive position of the person from whom the information was obtained." *Id.* at 2367 (quoting *Nat'l Parks & Conservation Ass'n v. Morton,* 498 F.2d 765, 770 (D.C. Cir. 1974)). The Court stated that there was no textual or historical support for the prior "competitive harm" standard —articulated in the D.C. Circuit's decision in *National Parks & Conservation Association* (and adopted in the Second Circuit in *Cont'l Stock Transfer & Trust Co. v. SEC,* 566 F.2d 373, 375 (2d Cir. 1977)). The Court further explained that "FOIA expressly recognizes that 'important interests [are] served by [its] exemptions,' . . . and '[t]hose exemptions are as much a

11

part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirements.' . . . So, just as we cannot properly *expand* Exemption 4 beyond what its terms permit, we cannot arbitrarily *constrict* it either by adding limitations found nowhere in its terms." *Argus Leader*, 139 S. Ct. at 2366 (citations omitted, alterations and emphasis in original).

The Supreme Court further observed (without deciding) that, in some instances, it might be possible for "privately held information [to] *lose* its confidential character for purposes of Exemption 4 if it's communicated to the government without assurances that the government will keep it private." *Id.* at 2363. However, nothing in the statute's text or history suggests that, for information that is typically treated as confidential by its owner, the government must in each instance show that it made assurances of confidentiality in order to establish that the information would be exempt. FOIA's legislative history confirms this reading. The House and Senate Reports that accompanied FOIA's enactment explained that Exemption 4 generally exempts information "if it would not customarily be made public by the person from whom it was obtained by the Government." H.R. Rep. 89-1497, at 10; *accord* S. Rep. 89-813, at 9. Thus, the way a particular type of information is typically treated by its owner usually suffices to settle the inquiry. The House Report explains that, in addition to the foregoing, the exemption "would *also* include information which is given to an agency in confidence, since a citizen must be able to confide in his Government." H.R. Rep. 89-1497, at 10 (emphasis added). That is because "where the Government has obligated itself in good faith not to disclose documents or information which it receives, it should be able to honor such obligations." *Id.*

### ii.    The Records at Issue Were Closely Held by JUUL

The Engelke declaration establishes that the records at issue were "customarily kept private, or at least closely held" by JUUL. *Argus*, 139 S. Ct. at 2363. First, Engelke has attested that all of the relevant records are "treated as highly confidential within the Company and are

12

stored on secure IT networks that are password-protected and/or encrypted conditions designed to ensure their confidentiality." Engelke Decl. ¶ 22. Second, the records "are not customarily shared with individuals who are not employees of the Company, and access is granted to employees only [on] a need-to-know basis." *Id.* ¶ 23. Although Engelke states that certain records have been produced in other ongoing legal matters, "[i]n each instance, [JUUL] produced the documents strictly on a confidential basis by including appropriate confidentiality language in the cover letter for each production and/or producing the documents under a confidentiality agreement." *Id.* Further, although some of the withheld records reflect agreements or communications with parties besides JUUL, those records and the underlying information remained "closely held," *Argus*, 139 S. Ct. at 2363, given the practices described above. In addition, to the best of Engelke's knowledge, the various protective measures have "proven effective in preventing the documents at issue from becoming publicly available." Engelke Decl. ¶ 24.

JUUL also took measures to maintain the confidentiality of the records when FDA obtained them. For example, the documents provided by JUUL "in response to the FDA's Section 904(b) request all bear a legend stating 'FOIA Confidential Treatment Requested,'" while the documents provided by JUUL to FDA during the 2018 inspection "bear large red CONFIDENTIAL stamps and/or bear confidentiality legends within the documents themselves, such as 'JUUL Labs, Inc. – CONFIDENTIAL INFORMATION,' 'CONFIDENTIAL,' or 'FOIA Confidential Treatment Requested.'" *Id.* ¶¶ 9, 11. Thus, the records at issue are confidential. *See Am. Small Bus. League v. United States Dep't of Def.*, 411 F. Supp. 3d 824, 831 (N.D. Cal. 2019) (holding that records were "confidential" under *Argus Leader* where, among other things, the submitter used secure, password-protective IT networks, marked the records with restrictive

legends when submitting them to the government, and such measures were effective in preventing the disclosure).

### iii. To the Extent Any Assurance of Privacy by the Government is Required under Exemption 4, JUUL Reasonably Relied on Such Assurances from FDA

To the extent that records may lose their confidential character through disclosure to the government without an assurance of privacy, in the instant case, JUUL did receive such assurances from the FDA when it produced the records. Although *Argus Leader* did not address this precise issue, it still provides an instructive framework. Specifically, in *Argus Leader,* the Supreme Court examined a "similar phrase" from Exemption 7(D), "'information furnished by a confidential source,'" and approvingly cited *United States Dep't of Justice v. Landano*, 508 U.S. 165, 173-74 (1993). Under *Landano*, whether privately held information loses its confidential character when disclosed to the government depends on an objective inquiry into the circumstances surrounding the disclosure. *See Landano*, 508 U.S. at 177-79.

The circumstances here demonstrate that JUUL had a reasonable expectation that FDA would maintain the relevant records as confidential. First, in the Section 904(b) request, FDA explicitly assured JUUL that "[c]onsistent with applicable statutes and regulations, the confidentiality of trade secret and confidential commercial information submitted to FDA pursuant to this request will be preserved." Engelke Decl., Ex. A. at 5. Second, FDA's disclosure regulation implementing FOIA Exemption 4 provides that "[d]ata or information submitted or divulged to the Food and Drug Administration which fall within the definitions of a trade secret of confidential commercial or financial information are not available for public disclosure." 21 C.F.R. § 20.61.

Likewise, under the FDCA, "any information reported to or otherwise obtained under section . . . [904] . . . or [704] . . . , which is exempt from disclosure under section (a) of section

14

552 of title 5, [i.e., FOIA], by reason of subsection (b)(4) of that section shall be considered confidential and shall not be disclosed, except that the information may be disclosed to other [FDA] officers or employees [as a part of their official work]." 21 U.S.C. § 387f. Engelke has similarly attested that JUUL relied on these assurances of confidentiality in the FDCA and FDA's regulations in responding to the Section 904(b) request and providing documents to FDA inspectors during the September 2018 inspection. *See* Engelke Decl. ¶ 12.

Further, FDA's Center for Tobacco Products maintains records submitted by regulated entities such as JUUL in file cabinets within a physically secure room. Barnes Decl. ¶ 7. And FDA further confirmed JUUL's expectation of confidentiality when it provided JUUL notice of the FOIA requests for the records at issue. FDA gives such notice when it "has substantial reason to believe that information in the records could reasonably be considered exempt under exemption 4 of [FOIA]." 21 C.F.R. § 20.61(e). The existence of this procedure—and the fact that FDA followed it here—gives further support to the reasonableness of JUUL's belief that FDA would protect the confidentiality of the information.

### iv.    The FOIA Improvement Act of 2016 Does Not Alter the Scope of Information that Is Covered Under Exemption 4

Plaintiffs and at least one other district court, *see Center for Investigative Reporting v. U.S. Customs and Border Protection*, No. 18 Civ. 2901 (BAH), 2019 WL 7372663 (D.D.C. Dec. 31, 2019), have suggested that the FOIA Improvement Act of 2016 now requires for Exemption 4 to be invoked an additional showing of harm to a submitter, despite the Supreme Court's holding in *Argus Leader*. But as another district court has held, *see Am. Small Bus. League*, 411 F. Supp. 3d at 835-36, that suggestion is incorrect.

As amended, the relevant portion of 5 U.S.C. § 552(a)(8) now provides: "(A) An agency shall—(i) withhold information under [FOIA] only if—(I) the agency reasonably foresees that

15

disclosure would harm an interest protected by an exemption described in subsection (b); or (II) disclosure is prohibited by law." 5 U.S.C. § 552(a)(8). As the FOIA request at issue in *Argus Leader* was submitted prior to this amendment, the Supreme Court did not consider it, although it had become law ahead of the *Argus Leader* briefing in the Supreme Court.

The legislative history of the amendment, however, expressly acknowledges that it "does not alter the scope of information that is covered under an exemption," and that it was intended to codify existing government policy. H.R. Rep. No. 114-391, at 9, 10 (2016); *accord* Attorney General Eric Holder, Memorandum for Heads of Executive Departments and Agencies Regarding the Freedom of Information Act, at 1-2 (Mar. 19, 2009), *available at* http://www.usdoj.gov/ag/foia-memo-march2009.pdf. This provision thus simply requires agencies to identify a foreseeable harm to an interest protected within the existing scope of certain exemptions, in line with prior policy. "In other words, even if an exemption applies, an agency must release a record if disclosure would not reasonably harm that exemption-protected interest — given its age, content, and character — and its disclosure is not prohibited by law." *Am. Small Bus. League*, 411 F. Supp. 3d at 835.

Nothing in the text of the amendment suggests that § 552(a)(8)(A) revives the "substantial competitive harm" standard for Exemption 4. As Justice Ginsburg noted during oral argument in *Argus Leader*, the 2016 amendment "just doesn't say competitive harm. It just says disclose what harm [to] an interest protected by an exemption." Transcript of Oral Argument (No. 18-481), 2019 WL 1766035, at *44 (Apr. 22, 2019). Instead, "ultimately, under [*Argus Leader*], the plain and ordinary meaning of Exemption 4 indicates that the relevant protected interest is that of the information's *confidentiality* — that is, its private nature. Disclosure would necessarily destroy the private nature of the information, no matter the circumstance." *Am. Small*

16

*Bus. League*, 411 F. Supp. 3d at 836 (N.D. Cal. 2019). So too here, where disclosure would destroy the private nature of the JUUL records.

However, in *Center for Investigative Reporting v. U.S. Customs and Border Protection*, the district court stated that the 2016 FOIA amendments "replace[] to some extent" the test under FOIA Exemption 4 articulated in *National Parks* that was overruled by the Supreme Court. 2019 WL 7372663, at *14. That holding, however, relies on the *Argus Leader* dissent, *National Parks*, and a district court decision discussing Exemption 3. *See id.* But *National Parks* has been overturned, Exemption 3 law does not apply here, and the dissent in *Argus Leader* lacks any force of law. Thus, we respectfully submit that the Court should follow the district court's well-reasoned opinion in *Am. Small Bus. League*.

Nonetheless, if this Court determines that the 2016 amendments require a harm test comparable to that used in *National Parks*, that standard has still been satisfied here. Engelke has attested that "[m]aking these documents publicly available would cause significant harm to [JUUL]." Engelke Decl. ¶ 25. For example, Engelke has sworn that many of the records "on their face reveal the Company's commercial strategy and operations." Engelke has further attested that disclosure of the records would reveal aspects of JUUL's company strategy and operations, as well as the composition of its products. *See* Engelke Decl. ¶¶ 28-32. Thus, to the extent any showing of harm is required, that standard has been satisfied here.

**CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment in favor of FDA

pursuant to Rule 56 of the Federal Rules of Civil Procedure.


Dated: March 3, 2020
       New York, New York

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York
                                        *Attorney for FDA*

                              By:       /s/ Charles S. Jacob
                                        CHARLES S. JACOB
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Tel.: (212) 637-2725
                                        Email: charles.jacob@usdoj.gov

18